IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

VS.                                         NM92138427-28, 2138442, 45-47

JAMES B. POUNDS

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the court following a trial on six charges brought against the defendant by the United States. The court heard the matter and took the decision under advisement. After considering the evidence, testimony, and applicable law, the court now finds as follows:

## I. FINDINGS OF FACT

At approximately mile marker 286 on the Natchez Trace, a traveler can look south and see eight burial mounds ranging from two to eighteen feet tall distributed over an area of about eighty-five acres. These are the Pharr Mounds. The evidence submitted to the court during trial showed that the boundary surrounding the Pharr Mounds area is somewhat atypical of the Trace boundary as it follows alongside the four hundred forty-four-mile roadway from Nashville, Tennessee to Natchez, Mississippi. Typically, the boundary that determines the property owned by the United States parallels the Natchez Trace Roadway on each side of the roadway, stretching approximately two hundred yards to either side. However, at mile marker 286 the boundary dips severely in a southerly direction on the south side of the Trace for approximately one thousand yards. The boundary then travels in an easterly direction for approximately eight hundred yards before turning north and returning almost to the roadway. The overall effect of this alteration is

1

to create a rough semi-circle that encompasses the field in which the ancient burial mounds sit. A maintenance road follows inside the boundary for almost the entire length of this boundary alteration.

The defendant, James B. Pounds, Jr., farms approximately six hundred acres immediately south of and adjacent to the southern tip of the boundary (at the base of the semi-circle). The bulk of that property is an open field, and at the time of the events in question, Pounds had soybeans planted in it. From the southernmost point on the maintenance road, sitting within the boundary of the Natchez Trace property, one can see a portion of the Pounds field, but to see the entire field would require leaving the federal property and going on to the Pounds property. There was some dispute at trial as to how much of the property could be seen from the Parkway itself – or more specifically from the Pharr Mounds visitor's area sitting alongside the Parkway – because the sites are approximately one thousand yards apart with a thin tree line between the two points.

On October 7, 2011, Ranger Jeffrey Hunter was working the evening shift near the Pharr Mounds when at approximately nine o'clock p.m. he encountered James Pounds, Sr. At the time of the encounter, Ranger Hunter was parked on the maintenance road with his lights off because he had information that someone had been hunting illegally at night in the area. When the senior Pounds approached in his vehicle, the two spoke briefly, and Hunter told Pounds he planned to leave shortly and drive to nearby Tupelo. Rather than go home, however, Hunter then moved his vehicle to the northeast section of the road and took up a position on a haystack to watch the field in which the mounds sit and to look past the field to a portion of the Pounds property. Approximately one hour later, Hunter watched as a vehicle traveled down the maintenance road

2

and stopped near the entrance to the Pounds property. Hunter then saw a spotlight light up the area briefly before being extinguished but was unable to tell specifically where the light had been aimed. Hunter testified that he then watched as the vehicle made a "three-point turn" and as it exited the area, it's headlights briefly illuminated the Pharr Mounds field. The government argued that the three-point turn showed the defendant never left the federal property but shined the light from the maintenance road and then turned around to return the way he came. It would shortly be determined that the defendant, James Pounds, Jr., was driving the vehicle Ranger Hunter was watching.

Not surprisingly, the defendant's explanation of the events differs from that of Ranger Hunter. Pounds testified that he drove down the maintenance road but then drove on to his own property before shining the spotlight. He explained that he did so in an effort to spot and kill wild hogs that had been damaging his property. He claimed he drove in and drove back out, and that he never made anything that resembled a "three-point turn." He also testified that he never shined the spotlight from federal property and that his headlights swept across the Pharr Mounds field only because he was turning out of his own property.

While watching these events, Hunter returned to his vehicle and began driving south on the maintenance road to meet the vehicle as it headed north and away from the Pounds property. Hunter almost immediately encountered the vehicle and when he activated his blue lights, the passenger threw at least two beer cans out the window into the woods alongside the road. Hunter then approached the vehicle and learned the driver was James Pounds, Jr., and the passenger was his fiancee, Jessica Calley. A loaded .243 caliber rifle lay between the couple and a spotlight lay on the floor. During this initial encounter, Calley stated that Pounds told her if they shot a deer,

3

that would "leave it in the field."[1]

After considering both versions of the events at issue and after watching the demeanor of all the witnesses, the court finds Ranger Hunter's testimony more credible. The witnesses were adamant as to what they saw and what occurred, but the testimony of Pounds and Calley that they saw five deer and did not shoot because they were not hunting deer conflicted with Calley's statement that they would leave a deer in the field if they shot one. It also conflicted with their introduction of photographs of crop damage they contend was caused by deer and that they were there to kill hogs for doing that very thing.

Ranger Hunter's testimony was clear and concise. He testified he saw the vehicle make the three-point turn, and he testified he never saw the vehicle approach from beyond the southern boundary for an uninterrupted period of time that he would have seen had the defendant driven on to his property and then returned back to the maintenance road. He also testified that despite the tree line between the Pharr Mounds visitor's area and the Pounds' property, he could easily see a spotlight illuminating the sky and the headlights of Pounds vehicle as it turned around on the maintenance road. Accordingly, the court finds that Pounds was indeed committing "acts consistent with headlighting deer" in violation of section 49-7-95 of the Mississippi Code. It is also clear that he did so from the maintenance road that is within the boundary of the property owned by the federal government.

---

[1] The defendant put on evidence that what Calley meant was they would leave deer in the field when they killed them for damaging their crops. According to Pounds, they would do this to show they were not hunting for sport. However, Ranger Hunter provided the more plausible explanation that Pounds would shoot and leave a deer in the field following a loud gunshot only to return later and retrieve the deer when any potential law enforcement who heard the shot and came to investigate would be gone.

4

Hunter arrested Pounds and charged him with: (1) hunting deer at night with a headlight in violation 18 U.S.C. §13 and section 49-7-95 of the Mississippi Code; (2) hunting from a roadway in violation of 18 U.S.C. § 13 and section 97-15-13 of the Mississippi Code; (3) use of an artificial light in violation of 36 C.F.R. § 2.2; (4) possessing a loaded weapon in a motor vehicle in violation of 36 C.F.R. § 2.4(f); (5) possessing an open container of alcohol in a motor vehicle in violation of 36 C.F.R. § 4.14; and (6) littering in violation of 36 C.F.R. § 2.14.

At trial, the defendant conceded possession of an open container and littering but argued the evidence was insufficient to find him guilty beyond a reasonable doubt of the remaining four charges. The court will address each remaining charge in turn.

## II. CONCLUSIONS OF LAW

### 1. Spotlighting

As noted, the government charged Pounds with hunting deer at night by headlighting or "spotlighting" in violation of 18 U.S.C. §13, which is simply the statute providing that a state's laws are adopted by the federal authorities so long as they are not inconsistent with or preempted by federal law. The government also charged Pounds with violating section 49-7-95 of the Mississippi Code. Section 49-7-95 provides in pertinent part:

> (1)(a) Any person who hunts or takes or kills any deer at night by headlighting, by any lighting device or light amplifying device shall, upon conviction thereof, be guilty of a Class I violation and shall be punished as provided in Section 49-7-141.
>
> (b) For any person to be charged with a violation of this subsection, that person must have been observed committing an overt act consistent with the hunting of deer at night with the aid of a light, lighting device or light amplifying device. Such observation of an overt act may include, but shall not be limited to, witnessing the discharge of a weapon capable of killing a deer, hearing the report of

5

> a firearm being fired, seeing the person in possession of a recently killed deer which could not have been killed during legal hunting hours, *or witnessing the person committing any acts consistent with headlighting deer in violation of this subsection.*

Miss. Code Ann. § 49-7-95 (West 2012) (emphasis added).

In response to the charge, the defendant argued the section did not apply to him. Specifically, the defendant referred to 49-7-95(5)(c), arguing that because he was a landowner, the subsection specifically precluded him. However, subsection five applies to "harassment of wildlife" rather than headlighting, the latter of which is a hunting violation while the former is simply looking at wildlife with a spotlight. There was no question that Pounds was charged for hunting with the aid of a headlight. The government referred often to the loaded .243 found in the vehicle.[2]

The defendant also argued that when he shined the spotlight, he was not on federal property, a defense that would divest this court of subject matter jurisdiction. However, after considering the evidence, the court finds that the defendant was indeed on federal property (the maintenance road) when he shined the light, and thus, the court has jurisdiction to decide the matter.

Because the evidence was clear that the defendant's actions were "consistent with headlighting deer" in violation of section 49-7-95, and that he did so from property owned by the United States government, the court finds him guilty beyond a reasonable doubt of citation

---

[2]The defendant also attempted to some extent to argue that because he owned the property he could hunt wildlife at night with the use of a light to protect his crops. While language addressing the protection of crops does appear in section 97-15-13, that section applies only to hunting from a road and will be discussed *supra*. It is clear that such a defense is inapplicable to a charge of violating section 49-7-95, hunting deer with a headlight.

6

2138427, "hunting deer at night by headlighting."

## 2. Hunting from a Roadway

Next, the government charged Pounds with violating section 97-15-13 of the Mississippi Code. That section provides in pertinent part:

> (b) It shall be unlawful for any person to hunt, if such person is in the possession of a firearm that is not unloaded on any street, public road, public highway, levee, or any railroad which is maintained by an railroad corporation, city, county, levee board, state or federal entity or the right-of-way of any such street, road, highway, levee or railroad.

Miss. Code Ann. § 97-15-13(b) (West 2012).[3]

The defendant responded that the section did not apply to him and pointed to subsection c that provides:

> (c) The provisions of this subsection shall not apply to any person engaged in a lawful action to protect his property or livestock.

Miss. Code Ann. § 97-15-13(c) (West 2012).

According to the defendant, his actions that night were specifically to protect his property from hogs that were rooting sections of his soybean field.[4] The court finds that the language of the statute, however, does not provide a defense to Pounds' actions in this instance. Pounds was driving on federal property at night, drinking beer, with a loaded rifle and a spotlight in his

---

[3] The court notes that subsection (1)(a) makes this statute applicable only during the "calendar days included in the open seasons on deer and turkey." The events at issue took place on October 7, 2011 during the archery season for deer.

[4] As noted *supra*, the defendant was inconsistent as to whether deer were causing damage to his soybeans. He introduced defendant's exhibit 5 ostensibly to show damage to his beans caused by deer, but both the defendant and Jessica Calley testified they saw five deer in the field that night but inexplicably did not shoot them.

7

vehicle. He testified that he saw five deer in his field but also testified that he did not shoot them because he was trying to find hogs that were damaging his crops. The court does not doubt that hogs were damaging the defendant's crops; nor does the court doubt that he would have shot a hog had he seen one that night. However, the court is equally certain that the defendant was looking for a deer to shoot. That he saw five deer and did not shoot makes it clear to the court that he did not see one he liked. In other words, the court finds he was *hunting* deer from the road rather than protecting his crops. This, of course, is illegal, and thus, the court finds him guilty beyond a reasonable doubt of citation number 2138428, "hunting from roadway."

### 3. Use of an Artificial Light

The government also charged the defendant with use of an artificial light in violation of 36 C.F.R. § 2.2. That regulation, however, applies to charges of hunting in park areas where hunting has not been specifically authorized. The court has examined the regulation and the caselaw interpreting it along with the evidence submitted to the court and cannot find that it applies to the "use of an artificial light." Because the regulation under which the government traveled does not meet the description provided in the citation, the court finds the defendant not guilty of citation 2138445, use of an artificial light.

### 4. Loaded Weapon

Finally, the government charged the defendant with possessing a loaded weapon in a motor vehicle in violation of state law pursuant to 36 C.F.R. 2.4(f). That regulation addresses possession of firearms in a national park area and provides: "The carrying or possessing of a weapon, trap or net in violation of applicable Federal and State laws is prohibited." Subsection h of the regulation goes further and provides:

8

> (h) Notwithstanding any other provision in this Chapter, a person may possess, carry, and transport concealed, loaded and operable firearms within a national park area in accordance with the laws of the state in which the national park area, or that portion thereof, is located, except as otherwise prohibited by applicable Federal law.

36 C.F.R. § 2.4(h).

The defendant argues, therefore, that he is not guilty of this charge because Mississippi law allows him to possess a weapon in his vehicle. Section 97-37-1(2) of the Mississippi Code provides:

> (2) It shall not be a violation of this section for any person over the age of eighteen (18) years to carry a firearm or deadly weapon concealed in whole or in part within the confines of his own home or his place of business, or any real property associated with his home or business *or within any motor vehicle*.

Miss. Code Ann. § 97-37-1(2) (West 2012) (emphasis added).

Because a person may carry a firearm in his motor vehicle in Mississippi, a person may do so within a national park area in Mississippi, and thus, the court finds the defendant not guilty of citation 2138446, carrying a loaded weapon in a motor vehicle in violation of state law.[5]

A judgment consistent with this opinion will issue this day.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE

---

[5] Of course, as can be seen in this instance, one who travels down the Natchez Trace with a loaded weapon in his vehicle during deer or turkey season may well be charged with violating section 97-15-13 of the Mississippi Code, hunting from a roadway.

9